**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MCNEILL & ASSOCIATES, LLC, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:09-CV-1219 (JCH) |
| | : | |
| v. | : | |
| | : | |
| CONTINENTAL CASUALTY CO., | : | NOVEMBER 1, 2010 |
| Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 44)**

**I.     INTRODUCTION**

Plaintiff, McNeill & Associates, LLC ("McNeill & Associates"), brings this action against defendant, Continental Casualty Co. ("CCC"), for damages resulting from CCC's failure to defend McNeill & Associates in a Connecticut malpractice lawsuit, allegedly in breach of the parties' insurance contract and in violation of Connecticut law.

Defendant moves the court under Fed. R. Civ. P. 56, seeking summary judgment in its favor. With respect to Count One (breach of contract), CCC argues that it is not in breach. With respect to Count Two (breach of duty of good faith), CCC argues that the facts do not support McNeill & Associates' claim. Finally, with respect to Count Three (violation of the Connecticut Unfair Trade Practices Act ("CUTPA")), CCC argues that the facts do not support a claim of "general business practice." CCC additionally moves the court to strike McNeill & Associates' request for punitive damages and attorneys' fees in the event the court finds in CCC's favor with respect to Counts Two and Three. For the following reasons, the court grants defendant's Motion for Summary Judgment with respect to Count Two. The court denies all other aspects of the Motion.

## II.     FACTUAL BACKGROUND[1]

On August 30, 2006, CCC issued a legal malpractice insurance policy to McNeill & Associates. L.R. 56(a)(1) Stmt. ¶ 1. This policy purported to cover malpractice claims arising during the policy period August 30, 2006, to August 30, 2007, including claims for legal representation that pre-dated the policy. Id.; Def.'s Mot. for Summ. J. Ex. 1, at 28. However, a limitation was placed on the policy for claims that "an Insured" was aware of before the issuance of the policy. Def.'s Mot. Ex. 1, at 28. While McNeill & Associates is listed as the "Named Insured" in the policy, see id. at 11, the policy also includes an "Attorney Schedule," which lists Thomas McNeill ("McNeill") and Alvin Taylor ("Taylor") as attorneys for McNeill & Associates, id. at 12.

McNeill & Associates was officially formed on March 13, 2006, with McNeill as the only lawyer. L.R. 56(a)(1) Stmt. ¶ 7. However, for many years prior to the formation of the LLC, McNeill and Taylor operated as partners under the name McNeill & Associates and communicated with their clients using letterhead that listed both attorneys. See id. at ¶¶ 3, 6. This partnership ended in early 2005, although Taylor remained in the office space, renting from McNeill & Associates. Id. at ¶ 6.

In or around July 2005, Taylor began to represent an individual by the name of Alex Perry ("Perry") in a bankruptcy proceeding. See Def.'s Mot. Ex. 3, at 1. Both McNeill and Taylor claim that Taylor represented Perry in Taylor's individual capacity and not on behalf of McNeill & Associates. Pl.'s Disputed Issues of Material Fact ¶¶ 1-2 (Doc. No. 49-1). However, in communications with Perry, and as late as August 2006,

---

[1] For the purposes of this section, undisputed facts will be cited to CCC's Local Rule 56(a)(1) Statement (Doc. No. 44). All other facts will be cited to the record produced by the parties.

Taylor used "McNeill & Associates" letterhead. L.R. 56(a)(1) Stmt. ¶ 8. Additionally, in his appearance on behalf of Perry, Taylor is identified as being employed by McNeill & Associates. Id. at ¶ 9.

Perry has since filed suit against Taylor and McNeill & Associates for malpractice involving Taylor's conduct during his representation of Perry. See id. at ¶ 11. This mistake was acknowledged by Taylor in a letter dated August 23, 2006, using his personal letterhead. Id. at ¶ 10. McNeill & Associates requested CCC to defend it in this litigation, pursuant to the aforementioned insurance policy. Id. at ¶ 12. CCC denied this request in a letter dated May 29, 2007, on the ground that Taylor was aware of the risk before the policy came into effect. Id.

## III. STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id. In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. See Fed R. Civ. P. 56(c); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to

3

defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that a non-moving party must point to more than a mere "scintilla" of evidence in order to defeat a motion for summary judgment).

## IV. DISCUSSION

### A. Breach of Contract (Count One)

CCC moves for summary judgment on Count One of the Complaint on the ground that it did not, as a matter of law, violate its contract with McNeill & Associates. See Hartford Cas. Ins. Co. v. Litchfield Mutual Fire Ins. Co., 274 Conn. 457, 462 (2005) ("Construction of a contract of insurance presents a question of law for the court . . . ." (internal quotation marks omitted)). The court, however, finds that there remain material issues of fact that must be resolved, and it cannot enter judgment on this claim.

CCC has clearly agreed to defend McNeill & Associates against claims of the kind that Perry brought against it. In fact, even if claims are "groundless, false or fraudulent," CCC undertook a duty to defend McNeill & Associates against them. See Def.'s Mot. Ex. 1, at 28. Additionally, CCC cannot rely exclusively on the four corners of

4

the complaint and must defend McNeill & Associates "if any facts known to [CCC] suggest that the claim falls within the scope of coverage." Hartford Cas. Ins., 274 Conn. at 466-67. In other words, the duty to defend cannot be narrower than the duty to indemnify. Id. at 467. Therefore, the court must examine the underlying complaint and all of the facts available to CCC in order to analyze its duty to defend.

The insurance policy in question does not cover activity that an "Insured had a basis to believe . . . might reasonably be expected to be the basis of a claim" prior to the inception date of the policy. Def.'s Mot. Ex. 1, at 28. Taylor's representation of Perry and his apparent malpractice occurred prior to August 30, 2006, the date on which the policy commenced. See generally Def.'s Mot. Ex. 3. Therefore, if either (1) McNeill was aware of Taylor's representation of Perry and reasonably expected it might give rise to a claim against McNeill & Associates, or (2) Taylor was "an Insured" for the purposes of the policy, as he had a clear basis to expect the representation might result in a claim prior to August 30, 2006, then CCC did not have a duty to defend under the policy.

McNeill admits to having knowledge of Taylor's representation of Perry. McNeill Dep. 27:9-14, 28:11-16, Apr. 1, 2010, Ex. A to Pl.'s Opp. (Doc. No. 49). However, he claims to have been unaware that Taylor communicated with Perry using "McNeill & Associates" letterhead or of Taylor's use of the firm's name in his appearance in front of the Bankruptcy Court. Id. at 24:9-25:1, 28:17-30:8. In light of McNeill's testimony, the court finds that there is a material issue of fact as to the extent of McNeill & Associates' awareness of Taylor's representation and the concomitant risk of a suit against the firm.

Taylor was never a member of the limited liability company McNeill & Associates,

which was incorporated after Taylor and McNeill ended their partnership. L.R. 56(a)(1) Stmt. ¶ 7. Therefore, in order for Taylor to have constituted "an Insured," he must have been a "lawyer previously affiliated with [McNeill & Associates] or a predecessor firm as a partner, officer, . . . but only for legal services performed <u>on behalf of</u> [McNeill & Associates]." Def.'s Mot. Ex. 1, at 30 (emphasis added). Throughout Taylor's representation of Perry, he used "McNeill & Associates" letterhead, and his appearance before the Bankruptcy Court suggests that he was employed by the firm. However, both McNeill and Taylor deny that Taylor's representation of Perry was "on behalf of" McNeill & Associates. McNeill Dep. 24:9-12, 26:19-27:1; Taylor Dep. 32:19-22, 33:9-18, Jan. 11, 2008, Ex. A to Pl.'s Opp. Given this testimony, the court finds that there is a material issue of fact as to whether Taylor was acting on behalf of McNeill & Associates.

In light of the record, there is a material issue of fact as to whether the activity in question is excluded from coverage. Therefore, there is a material issue of fact with respect to CCC's breach of its duty to defend McNeill & Associates, and the court denies summary judgment with respect to this claim.

    B.    <u>Breach of Duty of Good Faith (Count Two)</u>

McNeill & Associates claims that CCC violated its duty of good faith by denying coverage for two reasons. First, it argues that, under Connecticut law, CCC had a clear duty to defend McNeill & Associates and that its denial was, therefore, in bad faith. Next, McNeill & Associates argues that the listing of Taylor as an attorney of McNeill & Associates was in bad faith.

"Bad faith in general implies both actual or constructive fraud, or a design to

mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake . . . , but by some interested or sinister motive." 19 Perry St., LLC v. Unionville Water Co., 294 Conn. 611, 637 (2010). In other words, evidence of "mere negligence" is insufficient on its own to support a claim of bad faith. Id. Violation of a clear duty to defend might be evidence of bad faith. However, where the duty is "fairly debatable, i.e., if the insurer had some arguably justifiable reason" for rejecting the claim, additional evidence is required. McCulloch v. Hartford Life & Accident Ins. Co., 363 F. Supp. 2d 169, 177 (D. Conn. 2005); see also 19 Perry St., 294 Conn. at 637 ("[I]ncorrect interpretation . . . does not amount to bad faith conduct without an associated 'dishonest purpose.'").

Under Connecticut law, an insurer must defend against a claim that might possibly be covered, upon examination of the underlying complaint. See R.T. Vanderbilt Co. v. Cont'l Cas. Co., 273 Conn. 448, 470 (2005). The insurer cannot rely on information "outside the four corners of [the] pleadings" to reject a claim. Hartford Cas. Ins., 274 Conn. at 464. McNeill & Associates argues that an examination of the complaint in this case clearly requires CCC to defend the firm against Perry's lawsuit. Pl.'s Opp. at 11-12. However, quite the opposite is true. The underlying complaint alleges that Taylor was employed by McNeill & Associates at the time of his representation of Perry, see Def.'s Mot. Ex. 1, at 1, and that Taylor was aware of his mistake at least as early as August 23, 2010, seven days before the insurance policy was issued, id. at 3. If Perry's complaint is correct, then CCC has no obligation to defend McNeill & Associates.

The court finds that there remain material issues of fact as to whether McNeill &

Associates was aware of the risks posed by Taylor's representation of Perry and as to whether Taylor's representation was "on behalf of" McNeill & Associates. However, even when considering the facts in a light most favorable to plaintiff, no reasonable jury could find that, given the information available to it, CCC's duty to defend was clear. Rather the evidence discussed, supra, reveals a complicated factual and legal question. See Maher & Williams v. ACE Am. Ins. Co., Civil No. 3:08cv1191, 2010 WL 3546234, at *17 (D. Conn. Sept. 3, 2010) (granting insurer summary judgment on a bad faith claim where "the question [of coverage] was not a simple one"). Without further evidence of bad faith, McNeill & Associates' claim fails as a matter of law.

McNeill & Associates second argument is also unsustainable. Its claim that CCC included Taylor's name on the "Attorney Schedule" in bad faith finds no support in the record before the court. In fact, the court finds the inclusion largely irrelevant to an analysis of CCC's duty to defend.[2] Further, the duty of good faith and fair dealings arises from a contract relationship once formed and not out of conduct preceding its formation. See Macomber v. Travelers Prop. & Cas. Corp., 261 Conn. 620, 638-39 (2002). CCC's inclusion of Taylor in the Attorney Schedule is "conduct [that] occurr[ed] prior to, or during, the formation of [the] contract" and cannot give rise to a claim of bad faith for denial of coverage. Id. at 638.

In light of the evidence, no reasonable jury could find that CCC acted in violation

---

[2] The insurance policy makes no reference to the Attorney Schedule. Its definition of "an Insured" covers only the "Named Insured," McNeill & Associates, and attorneys that worked for it or on its behalf. See Def.'s Mot. Ex. 1, at 30-31. CCC's inclusion of Taylor in the Attorney Schedule is not determinative of whether he worked for McNeill & Associates or on its behalf and, therefore, whether Taylor was "an Insured" for the purposes of the policy. The court does not mean to suggest that the Schedule will have no relevance in this litigation. McNeill & Associates' failure to correct the Attorney Schedule might, for example, suggest that Taylor was still working on behalf of the firm.

of its duty of good faith and fair dealings, and the court, therefore, grants defendant's Motion for Summary Judgment with respect to Count Two.

### C. CUTPA Violation (Count Three)

Count Three of McNeill & Associates' Complaint alleges violations of CUTPA. Conn. Gen Stat. § 42-110a et. seq.; see Compl. at 5, Ex. A to Notice of Removal (Doc. No. 1). The Complaint does not specify which section of that statute or the Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. § 38a-815 et seq., gives rise to the firm's claim of unfair trade practices.[3] Instead, the Complaint states that CCC's actions, "which were performed in the conduct of trade or commerce, constitute violations of [CUTPA] on the part of [CCC], in that said actions were immoral, oppressive, unscrupulous, and caused substantial monetary losses to the plaintiff." Compl. at 5. CCC, assuming that McNeill & Associates seeks relief under Conn. Gen. Stat. § 38a-816(6), challenges McNeill & Associates' lack of evidence of a "general business practice," as required for claims pursuant to that subsection. See Lees v. Middlesex Ins. Co., 229 Conn. 842, 847-48 (1994).

In Opposition, McNeill & Associates does not produce evidence of a general business practice. Instead, it states that its CUTPA claim is not pursuant to section 38a-816(6), but rather section 38a-816(8), which does not appear to require proof of a general business practice. See Hotak v. Barth Ins. Agency, Inc., No. CV010075027S, 2003 WL 23149917, at *5 (Conn. Super. Ct. Dec. 12, 2003); see also Lees, 229 Conn. at 848 n.5 ("[O]f the sixteen categories of unfair insurance practices proscribed by

---

[3] Connecticut courts permit CUTPA claims pursuant to violations of CUIPA. See Nazami v. Patrons Mut. Ins. Co., 280 Conn. 619, 625 (2006).

General Statutes § 38a-816, only subsection (6) expressly requires proof that the unfair claim settlement practices enumerated therein were committed or performed 'with such frequency as to indicate a general business practice.'"). The court, therefore, denies CCC's Motion for Summary Judgment with respect to Count Three as moot in light of McNeill & Associates' representation that it is not pursuing a CUTPA claim based on section 38a-816(6).

### D. Attorneys' Fees and Punitive Damages

CCC moves the court to strike the portion of the Complaint where McNeill & Associates demands attorneys' fees and punitive damages. However, the court denies CCC's Motion for Summary Judgment with respect to McNeill & Associates' CUTPA claim pursuant to 38a-816(8), which CCC acknowledges supports a demand for attorneys' fees and punitive damages. See Def.'s Mem. at 9. Therefore, the court denies CCC's request to strike.

### V. CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion for Summary Judgment (Doc. No. 44) in part, with respect to Count Two, and denies it in all other respects.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 1st day of November, 2010.

     /s/ Janet C. Hall
     Janet C. Hall
     United States District Judge